UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-24509-CIV-BLOOM/VALLE

**PRACHI GANDHI**,
*individually as parent and natural guardian of AG, a minor,*
**ABHISHEK GANDHI**,
*individually, as parent and natural guardian of AG, a minor*,

      Plaintiffs,
v.

**CARNIVAL CORPORATION**,
*d/b/a* CARNIVAL CRUISE LINES,

      Defendant.
_____/

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court on Defendant's Motion for Summary Judgment, ECF No. [34], filed on August 27, 2014. Plaintiffs filed the instant action seeking damages for negligence after Plaintiffs' daughter was injured in an elevator on Defendant's cruise ship. The Court has carefully reviewed the record, the parties' briefs, and the applicable law.

    **I.**    **Background**

Plaintiffs traveled on Defendant's cruise ship, the *Legend*, in December of 2012 with their three-year-old daughter, A.G. It was a family trip, which included A.G.'s uncle. While aboard Elevator 6 of the *Legend*, going from deck nine to deck eight, A.G. was injured after her arm, past her elbow, was caught in the gap between the elevator door and the frame of the elevator car as the elevator doors opened. A.G. was near the front of the elevator with her uncle, and A.G.'s father was standing behind them, standing with a stroller. A.G.'s uncle and father did not see exactly what happened at the moment A.G. was injured. A.G.'s started screaming, and as her father and uncle looked down at her, they saw that her arm was stuck between the elevator

door and the front of the elevator, and they saw that she was bleeding. Other passengers came to help, eventually taking a piece of wood to wedge the gap and freeing A.G.'s arm. When Defendant's staff surveyed the scene, the door was bent and there was blood on the door and on the floor. A.G. was treated while on the ship, and her parents sought treatment for her after the voyage ended. The instant lawsuit followed.[1] The record contains deposition testimony of A.G.'s father, mother, and uncle, employees of Defendant, and expert deposition testimony and reports from both Plaintiffs' experts and Defendant's experts.

**II.     Legal Standard**

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including inter alia, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Further, the Court does not weigh conflicting evidence.

---

[1] The Court dismissed Plaintiffs' claims of negligent infliction of emotional stress, medical expenses (as an independent claim), and loss of filial consortium for failure to state a claim, and the Court granted Defendant's Motion to Strike references in Plaintiff's Complaint to the doctrine of *res ipsa loquitur* because it is not an independent cause of action. The Court reserved ruling on whether an instruction on *res ipsa loquitur* was appropriate. *See* ECF No. [15].

*See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (*quoting Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

**III.    Analysis**

General maritime law applies to this case because it involves a claim of a tort "committed aboard a ship sailing in navigable waters." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989). Where well-developed maritime law does not relate to a particular claim, general common law and state law principles are supplementary. *See Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2011) (citing cases).

A successful negligence claim in a maritime tort case, like in a general negligence case, requires a showing that "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). "In this Circuit, whether a party was negligent constitutes a question of fact." *Keefe*, 867 F.2d at 1321. "Though summary judgment is highly unusual in a negligence action where the assessment of reasonableness generally is a factual question to be addressed by the jury, it is nonetheless appropriate when the non-moving party has failed to set forth any facts that go to an essential element of the claim." *Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F. Supp. 1308, 1322 (S.D. Fla. 2011) (quoting *King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997) (internal quotations and alternations omitted)).

"A shipowner owes the duty of exercising *reasonable care* towards those lawfully aboard the vessel who are not members of the crew." *Chaparro*, 693 F.3d at 1336 (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959) (emphasis in original)). This standard "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Id.* (quoting *Keefe*, 867 F.2d at 1322 (alterations omitted)).

Here, Plaintiffs contend that Defendant breached its duty (a) by failing to warn of the danger of an elevator's gap, and (b) by negligently maintaining the elevator on which Plaintiffs' child was injured.[2] Defendant argues that it had no duty to warn cruise passengers about the danger of getting trapped in an elevator door gap because the risk is open and obvious, and

---

[2] Plaintiffs have only sued Carnival and do not pursue theories that the elevator was defectively designed or defectively manufactured.

because it had no actual or constructive notice that the particular elevator constituted a dangerous condition. Defendant also argues that Plaintiffs have not shown sufficient evidence of breach because no one saw what happened at the moment when the elevator injured A.G., and measurements taken immediately after the accident showed that the elevator was in compliance with code specifications and the manufacturer's recommendations.

### A. Defendant's Duty to Warn

A defendant has the duty to warn of known dangers on its cruise ships that are not open and obvious. *See Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006) (quoting *Luby v. Carnival Cruise Lines, Inc.*, 633 F. Supp. 40, 41 (S.D. Fla. 1986)). Knowledge of a danger can be shown with evidence of actual or constructive notice of a risk-creating condition. *See Cohen v. Carnival Corp.*, 945 F. Supp. 2d 1351, 1355 (S.D. Fla. 2013).

Here, the Court finds that genuine issues of material fact exist as to whether the gap between the elevator's frame and the door is an open and obvious condition, obviating the duty to warn. The court's reasoning in *Jones v. Hancock Holding Company*, 707 F. Supp. 2d 670 (M.D. La. 2010), is instructive. The plaintiff in *Jones* was injured after she tripped and fell while attempting to exit an elevator that had stopped approximately six inches below the floor in front of her. The defendant, relying on *Wallace v. Treasure Chest Casino, LLC*, 920 So. 2d 251 (La. App. 5 Cir. 2005), argued that the mis-leveled elevator constituted an open and obvious condition. Denying the defendant's summary judgment motion, the court in *Jones* distinguished the holding in *Wallace* because though the court in *Wallace* held that an elevator, which was mis-leveled with the floor by eight to twelve inches, constituted an open and obvious condition, the elevator in *Wallace* had stopped with the doors partially opened, and the injured plaintiff had pried the elevator doors open to enter the elevator and subsequently fell. The court in *Jones*

5

explained that the elevator's condition was open and obvious in *Wallace* because the plaintiff had taken "affirmative steps to pry the obviously malfunctioning elevator doors open prior to her entrance," there was no evidence that the elevator in *Jones* might have been malfunctioning. *Jones*, 707 F. Supp. 2d at 674.

Here, like *Jones*, the record does not indicate that it was evident at the time A.G. entered the elevator with her father and uncle that the gap between the elevator door and the elevator frame was large enough to pose a risk to A.G. Though it may be obvious that a gap between an elevator door and frame may pinch a child's hand and lead to a child's lesson learned, paid with a few tears, that obviousness does not extend to a child's entire arm getting jammed in an elevator gap. *Cf. Cremeans ex rel. Cremeans v. Speedway SuperAmerica LLC*, 196 F. App'x 401, 405 (6th Cir. 2006) (risk of child sticking finger into a hinge of a closing door is open and obvious). The Court cannot find that, as a matter of law, that the elevator gap in this case constitutes an open and obvious condition which obviates a duty to warn.

Further, Plaintiffs have submitted sufficient evidence that, when taken in the light most favorable to them as the non-moving parties, creates a genuine issue of material fact as to whether Defendant had actual or constructive notice about the condition of the elevator. The record evidence consists of deposition testimony from Vilko Barada, employed by Defendant as a first electronic officer in the engine department, who is responsible for technical maintenance on the ship. *See* ECF No. [35-2] at 2. Barada testified that the manufacturer's manual, which is kept on the ship contains a warning that says "do not stand too close to the elevator doors. Clothing and fingers may get caught in the moving elevator door." *Id.* at 7. Although Plaintiff concedes that it is not material to this issue, Barada also testified in his deposition that he was aware of another incident on the ship involving a child's hand and elevator doors prior to the

incident involving A.G. *See id.* at 19-20. This evidence, taken in the light most favorable to Plaintiffs, supports the conclusion that a genuine issue of material fact exists as to whether Defendant had actual or constructive notice of the dangerous condition, that they failed to warn passengers about, which caused the injuries to A.G.

## B. Defendant's Duty to Keep Premises Safe

Even assuming, arguendo, that Defendant did not have a duty to warn, Defendant had a duty to ensure that the elevator was in a reasonably safe condition. *See, e.g.*, *Potash v. Orange Lake Country Club, Inc.*, No. 6:03CV1652ORL18KRS, 2005 WL 1073926, at *3 (M.D. Fla. Apr. 29, 2005) (citing Florida cases explaining that discharge of the duty to warn does not discharge duty to maintain the premises). Defendant maintains that no record evidence exists that the elevator door gap constituted an unreasonably dangerous condition because, after inspecting the elevator immediately following the accident, Defendant's chief electrician found everything was in good condition, and the door gap complied with applicable code specifications and manufacturer's recommendations. ECF No. [34] at 5-9. *See also* ECF No. [35-9] at 25 (testimony of Barada that the standard is between 5 and 10mm); ECF No. [36-2] at 1 (manufacturer maintenance instructions explaining "must be adjusted so, that any panel do not touch another and any gap between frame, sill or another panel is" "max. 10 mm, nom. 5 mm"); ECF No. [36-1] at 2 (post-accident measurements showing gaps within this range). Defendant explains that it put the elevator back in service the same afternoon.

Record evidence exists from the Defendant's expert that A.G.'s injury occurred because she was applying force to the elevator door, and "the fact that she was able to have her fingers/arm enter the gap is not evidence of a malfunction improper adjustment or operation of the elevator from a human factors standpoint." ECF No. [35-7] at 7-8. The expert opines that

7

"this incident is the result of inadequate adult supervision allowing a three year old to be in a position to have her hand/arm contacted and forcefully pulled into the gap between the elevator door and door frame as the door slid to the open position." *Id.* at 8. In contrast, the Plaintiffs' expert witness opined that:

> The physical size of the child's arm is larger than the min/max dimension for clearance in the space of entrapment. It is my professional opinion, with a reasonable degree of professional certainty that this incident would not have happened if the dimensions of 5 mm and 10 mm and or/ [sic] the ANSI A17.1 standard of ½" were properly maintained. These dimension [sic] would have had to increased due to the wear of the door guides, loose attachment to the car door of the door guide bracket, and/or improper depth setting of the door guides in the cab sill.

ECF No. [36-5] at 11. *See generally* ECF No. [35-3]. The record also contains evidence that: Defendant did not have procedures in place to check the door gaps as part of its routine maintenance and inspection, *see* ECF No. [35-2] at 11 ("we didn't have any procedure, or I never requested to any of – any of our electrician [sic] to regularly check the door gaps"); no procedure was in place to verify when the crew checked the gaps on any elevator door *id.* at 12; and Defendant's staff were not trained on how to measure these gaps. *See id.* at 14. The elevator's manufacturer, KONE, measured the gaps more frequently than the manufacturer's instructions of 25,000 cycles or every two years, *see id.* at 29. However, an issue of fact is presented regarding the inner workings of the elevator. This includes the elevator's guide shoes—which guide the position of the entire elevator—and plastic gibs—which help keep the elevator door from moving in the direction perpendicular to the doors' opening and closing. The record contains testimony that the guide shoes and gibs were in good condition when examined after the incident and were not replaced, ECF No. [35-9] at 31, and the record contains testimony that the gibs are examined monthly and replaced annually if broken, which is indicated by pushing the door and looking for "any big play in between the door." *Id.* at 29. Yet, the record also contains evidence

8

that only the guide shoes, not the gibs, were part of Defendant's elevator preventative maintenance. *See* ECF No. [36-3].

In sum, the Court finds that the evidence in the record creates a genuine issue of material fact as to whether Defendant breached a duty to keep its premises safe by avoiding injuries in the gaps of the elevator door. The conflict between Defendant's and Plaintiffs' expert witness testimony creates a genuine issue of material fact as to the reason why A.G. was injured in the elevator gap, and whether that reason indicates Defendant breached its duty of care to A.G.[3] The only way to resolve this question is to engage in fact finding and credibility determinations, which will take place at trial with the testimony of the numerous lay and expert witnesses, along with the exhibits from the parties. This is the case even if Defendant complied with all code specifications and manufacturer recommendations. *See, e.g.*, Restatement (Third) of Torts: Phys. & Emot. Harm § 16 (2010); *Grand Trunk Ry. Co. of Canada v. Ives*, 144 U.S. 408, 421-23 (1892).

### IV.   Conclusion

Being fully advised, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment, **ECF No. [34]**, is hereby **DENIED.**

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 25th day of September, 2014.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

---

[3] Plaintiffs' argue that this evidence supports denial of summary judgment based on a theory of *res ipsa loquitur*. Because the Court finds that sufficient evidence exists to deny summary judgment without application of the doctrine, the Court need not address this argument for the purposes of deciding the instant motion.

CASE NO. 13-24509-CIV-BLOOM/VALLE